# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 20, 2006

## DENNIS PYLANT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Cheatham County**
**No. 13469      Robert E. Burch, Judge**

---

**No. M2005-02721-CCA-R3-PC - Filed June 29, 2007**

---

JAMES CURWOOD WITT, JR., J., dissenting.

The circumstances of the present case are unusual and demand an unusually circumspect analysis of the axioms of post-conviction review. The petitioner, who is serving a life sentence for first degree murder, declined a plea offer of three years as a Range I offender for reckless homicide based upon counsel's advice to go to trial and pursue an "all or nothing" strategy. Although I do not quarrel *per se* with counsel's recommendation in this respect, I do point to counsel's failure to exploit at trial the indications of Ms. Davis's sole responsibility for the victim's death, and I view the failure as deficient performance of counsel that prejudiced the petitioner. Therefore, I respectfully dissent from the majority's holding that the petitioner failed to establish ineffective assistance of counsel.

The issue of counsel's trial preparation and performance *vis a vis* Ms. Davis is intertwined with the post-conviction court's decision to strike certain testimony from the post-

conviction hearing.  Thus, I begin with the State's post-conviction motion to strike.

Although the motion to strike was apparently submitted in writing, it does not appear in the appellate record.  The transcript of arguments and the post-conviction court's ruling indicate that the motion sought to strike from the post-conviction hearing record any and all post-conviction testimony about Ms. Davis's extrajudicial admissions of fault in the victim's death.[1]  A review of the post-conviction record shows that the following witnesses testified about such admissions:

| Witness | Extradjucial Statement of Ms. Davis |
|---|---|
| Lyla Defosio | "I know I beat him but I didn't aim to kill him; but I know I did. . . .  I know I did kill him." |
| Trina Jackson | (overheard telephone conversation, paraphrasing by Ms. Jackson) Ms. Davis said she "couldn't live with herself knowing that she had killed the [victim]." |

---

[1] The petitioner fleetingly mentioned that the Tennessee Rule of Evidence 803(a) state of mind exception applied to the post-conviction witnesses' testimony regarding the extrajudicial statements made by Ms. Davis.  However, the petitioner cites no other authority, *see* Tenn. R. App. P. 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on . . . ."); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."), and fails to argue why these statements would be relevant if they were in fact offered to prove Ms. Davis's state of mind, *see* Tenn. R. Evid. 401, 402.

| | |
|---|---|
| Sheila Pylant Wilson | "[Ms. Davis] said, [I am] going to lie and do and say anything [I have] to, to make sure that [I get my] kid back even if [the petitioner goes] to jail." |
| | "[I]f [the victim] wasn't around, then [we] would have the perfect family." |
| Lloyd Harris | Ms. Davis told Mr. Harris, the petitioner's bondsman, that the petitioner did not assault the victim. |
| Donald Pylant | "I'm the one that did this; but I'm going to have to put the blame off on [the petitioner] if I can where I can try to keep my other baby." |
| Maya Pylant | Ms. Davis threatened to accuse the petitioner of killing the victim unless the petitioner parted company with Ms. Pylant. |

| | |
|---|---|
| Dorothy Mills | Following preliminary hearing, Ms. Davis stated she was going to "put it off" on the petitioner. |

In the testimony of Ms. Defosio, Mr. Pylant, and Ms. Mills, the witnesses stated that, prior to the petitioner's trial, they told the petitioner's attorney about Ms. Davis's admissions. Additionally, the petitioner testified at the evidentiary hearing that he informed trial counsel in writing about the potential testimony of Mr. Harris, Ms. Jackson, Maya Pylant, and Ms. Mills.[2]

Although initially admitting testimony about Ms. Davis's extrajudicial admissions, the post-conviction court ultimately struck "all" evidence of such admissions on the hearsay ground that the petitioner failed to demonstrate that Ms. Davis was "unavailable for the Post-Conviction hearing."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, "[h]earsay is not admissible." *Id*. 802. Certain exceptions to the rule of exclusion of hearsay, however, are recognized. *See id*. 803 (enumerating exceptions that apply regardless of the declarant's availability at trial), 804 (enumerating exceptions that are applicable

---

[2]Although the post-conviction court opined that trial counsel's evidentiary hearing testimony about informing the petitioner of the nature and elements of the homicide charge was more credible than the petitioner's testimony on that point, the post-conviction court made no findings that the petitioner's evidence on other claims was unworthy of belief.

-4-

when the declarant is unavailable). One exception that applies when the declarant is unavailable allows a statement which, when made out of court, "so tended to subject the declarant to civil or criminal liability . . . , that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id*. 804(b)(3). For purposes of Rule 804, "unavailability" includes an exemption "by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement." Tenn. R. Evid. 804(a)(1). Accordingly, a trial court's ruling on whether a statement is hearsay is a question of law, and the appellate court reviews the issue de novo without a presumption of correctness. *See Shelia Rae Gibbs v. Robin Media Group*, No. M1999-00820-COA-R3-CV, slip op. at 3 (Tenn. Ct. App., Nashville, Aug. 25, 2000); *Russell v. Crutchfield*, 988 S.W.2d 168, 170 (Tenn. Ct. App. 1998).

Here the post-conviction testimony of Ms. Defosio, Ms. Jackson, Mr. Harris, Donald Pylant, Maya Pylant, and Ms. Mills about Ms. Davis's admissions was not hearsay. The statements were not offered for their truth at the post-conviction hearing. Instead, as post-conviction counsel explained on numerous occasions at the post-conviction hearing, the statements were offered to show that the petitioner's trial attorneys were on notice and had knowledge of the various witnesses' accounts of Ms. Davis's statements.

Thus, the evidentiary significance of the statements lies in the indication that trial counsel knew of potentially exculpatory evidence. *See Carl Ross v. State*, No. W1999-01455-CCA-R3-PC, slip op. at 6 (Tenn. Crim. App., Jackson, Oct. 25, 2000) (holding that "the petitioner failed to establish that counsel knew or should have known of any alibi defenses or alibi witnesses, much

less that any person would have served as an alibi witness"). Establishing counsel's knowledge is directly relevant to the question whether counsel's choice of what information to present to the jury was *professionally reasonable.* *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690-91, 104 S. Ct. at 2066.

A court has no basis for analyzing the aptness of hearsay exceptions when the statement under review is not even hearsay. Accordingly, the unavailability of Ms. Davis *for purposes of the post-conviction hearing* was immaterial. The post-conviction court erred in striking the testimony of post-conviction witnesses Defosio, Jackson, Wilson, Harris, Donald Pylant, Maya Pylant, and Mills.

That these witnesses' potential trial testimony was admissible in the post-conviction hearing in an effort to establish ineffective assistance of counsel, however, is distinct from the issue whether the effort ultimately succeeds. I will now address substantively the petitioner's claims of ineffective assistance of counsel before determining what remedy results from the error in excluding evidence in the post-conviction hearing.

To fathom the petitioner's claims of counsel's inadequate preparations, one considers how trial counsel could have used the various indications that Ms. Davis admitted guilt in the victim's death. Ms. Davis did not testify at trial. Although originally an indicted co-defendant with the petitioner, she pleaded nolo contendere to a reduced charge of child neglect prior to trial and received a four-year sentence.

Trial counsel's options regarding Ms. Davis and her extrajudicial statements were fundamentally defined by whether she was available or unavailable at trial. *See* Tenn. R. Evid. 804(a).

Unavailability could have been a consequence of fact or law. For instance, Ms. Davis could have been "factually" unavailable as unable to be located or physically beyond the reach of a Tennessee court's subpoena power. *See* Tenn. R. Evid. 803(a)(4),(5); *State v. Cureton*, 38 S.W.3d 64, 79 (Tenn. Crim. App. 2000). Had she appeared in court, she, nevertheless, could have still been unavailable as a "legal" consequence of refusing to answer questions or pleading a privilege in lieu of testifying. *See* Tenn. R. Evid. 803(a)(1), (2).

Had Ms. Davis been unavailable at trial, the defense could have introduced her hearsay declarations against her penal interests, an exception to the hearsay rule. *See* Tenn. R. Evid. 804(b)(3) (providing for admission of hearsay declarations against penal interests, provided the declarant is unavailable to testify). Clearly, many of the statements attributed to Ms. Davis by the several post-conviction witnesses were contrary to Ms. Davis's penal interests; they inculpated her in a homicide. The petitioner showed in the post-conviction hearing that, had Ms. Davis been unavailable to testify at trial, various witnesses, if believed by the jury, could have established that she fatally assaulted the victim as an apparent alternative to the petitioner's guilt.

On the other hand, had Ms. Davis been available and taken the stand at trial, counsel had tactical options, depending upon how Ms. Davis testified. Had she testified consistently with the alleged extrajudicial statements, her testimony would have served as direct exculpatory evidence for the petitioner. Alternatively, she might have denied responsibility for the victim's death. In that situation, the defense could have impeached her via asking her about her prior inconsistent statements. *See* Tenn. R. Evid. 613(b). If she denied making the statements, the defense could have presented the trial testimony of witnesses such as Mr. Defosio, Ms. Mills, Ms. Wilson, Ms. Jackson, Mr. Pylant, Mrs. Pylant, and Mr. Harris. In either case, the jury could have heard palpable evidence that Ms. Davis killed or admitted killing the victim.[3]

---

[3]In this particular case, it is practically insignificant that Rule 613(b) evidence offered to impeach Ms. Davis's denial of guilt would have only been apt for credibility or impeachment purposes. The nature of the crime – laceration of the victim's mesentery – suggests that one person fatally assaulted the victim. Thus, impeachment of Ms. Davis's testimonial denial of guilt could, as a practical matter, tend to exonerate the petitioner. This could be true even if the jury followed a trial court's instruction to consider the prior inconsistent statements for purposes of credibility only.

Consequently, given that counsel admitted in the post-conviction hearing that the defense theory at trial was that Ms. Davis killed the victim, trial counsel's failure to subpoena and utilize an available Ms. Davis at trial or, alternatively, to establish that she was unavailable to testify at trial, strongly suggests that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Of course, the post-conviction court never considered this question, having pre-empted the testimony of the petitioner's witnesses at the post-conviction hearing. Lead trial counsel testified at the post-conviction hearing that he did not call Ms. Davis as a witness at trial because he was out-voted by co-counsel and the petitioner. I would reject outright this explanation as a basis for an *informed tactical and strategic decision.*

Turning next to the question of prejudice, I must address the court's holding in *Black v. State*, 794 S.W.2d 752 (Tenn. Crim. App. 1990).

In *Black*, this court stated, "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Id.* at 757. Generally, presenting such witnesses in the post-conviction hearing is the only way a petitioner can establish that "the failure to discover or interview a witness inured to his prejudice . . . or . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Accordingly, a petitioner who establishes that trial counsel deficiently performed in failing to investigate or call witnesses is yet entitled to no relief "unless he can produce a material witness who (a) could have been found by a reasonable

investigation and (b) would have testified favorably in support of his defense if called." *Id.* at 757-58.

In the post-conviction hearing, the petitioner presented 11 witnesses, some of whom testified to Ms. Davis's admissions against her penal interests. The petitioner, however, did not present Ms. Davis in the post-conviction hearing. Yet, he argues on appeal that trial counsel was remiss in failing to call as trial witnesses not only the myriad individuals who appeared in the post-conviction hearing, but also *Ms. Davis herself.* Thus, given the dictates of *Black*, we must determine, for purposes of *Strickland* prejudice, the effect of the petitioner's not calling Ms. Davis to testify in the post-conviction hearing.[4] Entangled in this issue is the question whether the petitioner had the post-conviction burden of establishing what would have happened had counsel called Ms. Davis to testify at trial.

Based on the particular facts of this case, this court need not know which of the plausible eventualities resulting from calling Ms. Davis at trial would have unfolded. For that reason, counsel's failure to call her as a post-conviction witness does not preclude a finding of prejudice.

Looking first to the possible eventuality that Ms. Davis would have testified at trial that she fatally assaulted the victim, one initially observes that, had the post-conviction court as the

---

[4]The post-conviction court found that Ms. Davis was factually and physically available for testimony in the post-conviction hearing.

trial court of record found, for instance, that developments at trial revealed Ms. Davis's disposition to testify in this vein, the finding itself would have obviated the necessity of presenting Ms. Davis in the post-conviction hearing pursuant to *Black*. Moreover, I cannot imagine a situation wherein such a revelation could have unfolded during the trial without, ipso facto, indicating deficient performance of trial counsel in failing to call Ms. Davis as a defense witness.

Looking at the second and third plausible eventualities – that Ms. Davis was unavailable at trial or that she testified in contradiction to her extrajudicial statements – the substance of Ms. Davis's possible trial testimony would not have been the point of these alternatives of the ineffective assistance claim. Even if she had testified and denied her involvement or denied even confessing her involvement, proof of the prior inconsistent statements would have been the critical evidence from the petitioner's standpoint, not Ms. Davis's testimony per se. Of course, had she been unavailable for trial, there could have been no testimony to outline via *Black* in the post-conviction hearing. Thus, in order to show prejudice relative to the ineffective assistance claim, the petitioner need not have demonstrated whether Ms. Davis would have testified at trial, and, if so, whether she would have confessed on the trial witness stand. Essentially, it did not matter whether or how she might have testified at trial. The testimony the petitioner presented in the post-conviction hearing could be viewed as showing prejudice, without Ms. Davis's post-conviction testimony.

The bottom line is that, *given that the theory of defense was that the homicide was committed by Ms. Davis*, the failure to either call her at trial or establish her unavailability is ineffective assistance of counsel, assuming that the proffered witnesses were credible, and the failure

to utilize Ms. Davis at the post-conviction hearing appears to have no bearing on the issue. Moreover, trial counsel was unable to articulate in the post-conviction proceeding why doing nothing at trial about Ms. Davis was justified by strategy.

These determinations should lead us, upon de novo review of the issue of ineffective assistance of counsel, to vacate the felony murder conviction and order a new trial – but for one complication. Because the testimony of the "other" witnesses was stricken from the post-conviction hearing, the post-conviction court made no findings of credibility of the proffered witnesses, or whether the stricken evidence could have undermined confidence in the effectiveness of trial counsel's assistance.

Under the circumstances, granting post-conviction relief and ordering a new trial at this point would usurp the role and function of the post-conviction court. That court conducted a thorough analysis of the post-conviction issues and, in large measure, premised its finding that the petitioner failed to show prejudice upon its refusal to *consider* the testimony about Ms. Davis's admissions against penal interests. The rejection of this evidence was based upon the court's erroneous ruling that such evidence was inadmissible as hearsay evidence in the post-conviction proceeding. The post-conviction court would be fully capable of reconsidering the merits of the post-conviction evidence in light of a holding that the targeted testimony was, indeed, admissible. Thus, respectfully, we should reverse and vacate the order dismissing the post-conviction petition and remand the case to the post-conviction court to conduct further proceedings or make further findings in keeping with the views expressed in this dissenting opinion.

At bottom, the test for *Strickland* prejudice is not an evidence sufficiency inquiry; that is, a petitioner need not demonstrate that absent counsel's deficient performance sufficient evidence to convict would not have existed. Moreover, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2068. Indeed, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id*. at 694, 104 S. Ct. at 2068.

The appropriate test for prejudice, *Strickland* says, involves "[a]n assessment of the likelihood of a result more favorable to the defendant." *Id*. at 695, 104 S. Ct. at 2068. *Strickland* articulated the assessment, "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's unprofessional] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*., 104 S. Ct. at 2068-69. A "reasonable probability is a probability sufficient to undermine confidence in the outcome," *id*. at 694, 104 S. Ct. at 2068, and "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would *reasonably likely* have been different absent the errors," *id*. at 696, 104 S. Ct. at 2069 (emphasis added).

Before leaving the issue whether counsel ineffectively investigated and prepared the petitioner's trial defense, I acknowledge that some of the post-conviction witnesses testified to Ms. Davis's ill treating the victim prior to the victim's sustaining a fatal blow. The post-conviction court opined that the post-conviction testimony of such prior bad acts provided no basis for conjecturing

about a different outcome at trial.  I am uncertain about the court's rationale.  If the post-conviction court was expressing a disinclination to grant post-conviction relief based upon the prior-bad-act evidence alone, the court should re-evaluate its view of such evidence in light of, and as a complement to, any subsequent consideration of the evidence of Ms. Davis's admissions of guilt.


_____

JAMES CURWOOD WITT, JR., JUDGE